UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Pamela Kiesman

    v.                                    Civil No. 17-cv-243-JD
                                           Opinion No. 2018 DNH 081
Acting Commissioner, Social Security
Administration


O R D E R

Pamela Kiesman seeks judicial review, pursuant to 42 U.S.C.
§ 405(g), of the decision of the Acting Commissioner of Social
Security, denying her application for disability benefits under
Title II of the Social Security Act.  Kiesman moves to reverse
on the grounds that the Administrative Law Judge ("ALJ") erred
in weighing medical opinions, in assessing her residual
functional capacity, and in finding she could return to her
previous work.  The Acting Commissioner moves to affirm.


Standard of Review

In reviewing the final decision of the Acting Commissioner
in a social security case, the court "is limited to determining
whether the ALJ deployed the proper legal standards and found
facts upon the proper quantum of evidence."  Nguyen v. Chater,
172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).  Substantial evidence is "more than a scintilla of evidence" but less than a preponderance of the evidence.  Purdy v. Berryhill, --- F.3d ---, 2018 WL 1601791, at *3 (1st Cir. Apr. 3, 2018) (internal quotation marks omitted).  When the record could support differing conclusions, the court must uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 2018 WL 1601791, at *4.

## Background

Kiesman worked as an administrative clerk at a church until December of 2004, when she was forty-two years old.  She stopped working because her work hours had been cut so that the job did not justify her travel time and because she decided to take care of her father-in-law.  Two years later, in October of 2006, Kiesman injured her back when she was riding through a field in a truck and the truck hit a sink hole.

An MRI of her back showed a burst fracture at L1. Kiesman was treated with physical therapy, steroid injections, and prescription pain medication. Because Kiesman continued to complain of pain, her primary care physician, Dr. David Riss, prescribed pain medication over the next few years. Dr. Riss refilled Kiesman's pain medication prescriptions but said he would do drug testing as required by Kiesman's pain management contract.

In June of 2009, Kiesman applied for disability benefits. She saw Dr. Riss a month later, complaining of aching all over and lacking energy. On examination, Dr. Riss stated that the results were good and that he did not know what was wrong with Kiesman. Dr. Riss referred Kiesman to an orthopedic specialist, Dr. Jerry Knirk, who did an examination and noted that his objective findings did not justify the large amount of narcotic pain medication that Kiesman was taking. Dr. Knirk ordered physical therapy.

Dr. Riss completed a questionnaire in August of 2009 for Medicaid. He indicated that Kiesman could only lift less than ten pounds, could stand or walk for less than two hours in an eight-hour day, and could sit for less than six hours. Dr. Riss also indicated limitations in her ability to push and pull and to do postural activities.

At first Kiesman improved with physical therapy. After several months, however, she stopped attending appointments because of financial and transportation issues. She was discharged in June of 2010. Dr. Knirk saw Kiesman again in January of 2011. He noted that Kiesman had not stayed with physical therapy long enough to benefit and that she had changed "her clinical story" to add issues that were not present at her last examination in November of 2009. Dr. Knirk found no objective basis for Kiesman's complaints of pain and ordered physical therapy.

Kiesman asked Dr. Riss to refer her to another specialist. In April of 2011, Dr. Riss referred Kiesman to Maine Medical Partners Neurosurgery and Spine Unit.

In June of 2012, Dr. Riss completed a physical capacity questionnaire for Kiesman with the same limitations indicated in the 2009 questionnaire except that he increased her limitations as to postural activities. Dr. Riss also indicated that Kiesman had no ability to do handling, feeling, or fingering activities but amended the questionnaire six months later by crossing out those limitations. He left the parts of the form blank that asked for medical findings to support his assessments. In a letter dated July 30, 2012, Dr. Riss stated that Kiesman could

4

not even do a sedentary job but noted that she had seen

neurosurgeons and orthopedic doctors for her impairments.

Kiesman's last insured date for social security benefits

was December 31, 2009.  In January of 2012, Kiesman applied for

benefits due to disability that she claimed was caused by a

broken back and anxiety.  Her application was denied initially

and was again denied following a hearing before an ALJ.  Kiesman

sought review under § 405(g), and in response the Commissioner

conceded error, agreeing that the case should be remanded.  The

court remanded the case and ordered "rehearing to develop a more

robust evidentiary record."

On remand, the ALJ held a second hearing on February 11,

2016, and June 9, 2016.  Kiesman appeared, with her attorney,

and testified.  A medical expert, Dr. Louis Fuchs, board

certified in orthopedic medicine, testified at the hearing based

on his review of Kiesman's medical records.  A vocational expert

also testified.

The ALJ issued a decision on August 4, 2016, finding that

as of December 31, 2009, Kiesman had the residual functional

capacity to perform light work with additional limitations of

being able to stand or walk for four hours and sit for six hours

and the option to change positions as needed.  The ALJ also

found that she could occasionally do postural activities and

could occasionally reach overhead and do handling and fingering activities.  Based on that assessment, the vocational expert testified that Kiesman could return to her previous work as an administrative clerk.  As a result, the ALJ concluded that Kiesman was not disabled.  The Appeals Council denied review.


### Discussion

Kiesman contends that the ALJ erred in relying on the opinion of Dr. Fuchs, in giving little weight to Dr. Riss's opinion, in assessing her residual functional capacity, and in failing to explain the conflict between the Dictionary of Occupational Titles ("DOT") and Kiesman's previous work as an administrative clerk.  The Acting Commissioner contends that the ALJ appropriately weighed and considered the medical opinion evidence, accurately assessed Kiesman's residual functional capacity, and properly relied on the vocational expert to find that Kiesman could return to her previous work.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis.  20 C.F.R. § 404.1520; Purdy, 2018 WL 1601791, at *1-*2.  The claimant bears the burden through the first four steps of proving that her impairments preclude her from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir.

2001).  At the fifth step, the Acting Commissioner has the

burden of showing "evidence of specific jobs in the national

economy that the applicant can still perform."  Purdy, 2018 WL

1601791, at *2


A.  Medical Opinion Evidence

   Kiesman faults the ALJ for giving great weight to Dr.

Fuchs's opinions while giving little weight to Dr. Riss's

opinions.  In support, Kiesman notes that Dr. Fuchs did not

examine her and contends that Dr. Fuchs only considered two of

her twenty-nine medical records.  She argues that because Dr.

Riss was her long-term treating primary care physician, the ALJ

should have given his opinions more weight.

   An ALJ is required to consider the medical opinions along

with all other relevant evidence in a claimant's record.  20

C.F.R. § 404.1527(b).[1]  "Medical opinions are statements from

acceptable medical sources that reflect judgments about the

nature and severity of [the claimant's] impairment(s), including

[the claimant's] symptoms, diagnosis and prognosis, what [the

claimant] can still do despite impairment(s), and [the

_____

   [1] Because Kiesman's claim was filed before March 27, 2017,
the new rule for considering medical opinions does not apply.
See 20 C.F.R. § 404.1520c; Purdy, 2018 WL 1601791, at *4, n.8
(discussing § 416.920c under Title XVI).

claimant's] physical or mental restrictions." § 404.1527(a)(1).
Medical opinions are evaluated based on the nature of the
medical source's relationship with the claimant, the consistency
of the opinion with the other record evidence, the medical
source's specialty, and other factors that support or detract
from the opinion. § 404.1527(c).

A "treating source" is a physician or other acceptable
medical source who has provided "medical treatment or evaluation
and who has, or has had, an ongoing treatment relationship with
[the claimant]." § 404.1527(a)(2). An "ongoing treatment
relationship" exists "when the medical evidence establishes that
[the claimant] see[s], or ha[s] seen the [physician] with a
frequency consistent with accepted medical practice for the type
of treatment and/or evaluation required for your medical
condition(s)." Id.

If a treating physician's opinion is well-supported by
objective medical evidence and not inconsistent with other
medical evidence in the record, the ALJ will give the opinion
controlling weight. Id. When the ALJ does not give a treating
physician's opinion controlling weight, the ALJ will consider
the length of the treatment relationship and the frequency of
examinations along with the other factors used to assess all
medical opinions. § 404.1527(c). In other words, "a treating

physician's opinion is entitled to weight that reflects the physician's opportunity for direct and continual observation." Purdy, 2018 WL 1601791, at *4.

## 1. Dr. Riss

The ALJ acknowledged that Dr. Riss was Kiesman's treating primary care physician.  The ALJ gave Dr. Riss's opinions little weight because of the lack of objective medical evidence in the record, even in Dr. Riss's own treatment notes, that would support the level of impairment Dr. Riss found.  The ALJ also noted that Dr. Riss provided only conclusory opinions without objective evidence to support his findings.  The ALJ cited Dr. Riss's treatment note from July of 2009 when Dr. Riss found good results on examination, despite Kiesman's complaints of aching all over and staying in bed.  Dr. Riss stated at that time that he did not know what was wrong with Kiesman.

The ALJ distinguished Dr. Knirk's findings and opinions and Kiesman's own reports of her daily activities which showed functional ability beyond the sedentary level that Dr. Riss checked.  Dr. Knirk was Kiesman's treating orthopedic specialist.  The ALJ highlighted Dr. Knirk's normal findings on examination in November of 2009, right before Kiesman's date last insured on December 31, 2009.  Dr. Knirk also noted that he

did not find much reason for Kiesman to need the large amounts

of narcotic medication she was taking.

Therefore, the ALJ properly considered and weighed Dr.

Riss's opinions.  See Purdy, 2018 WL 1601791, at *5.


    2.  Dr. Fuchs

Dr. Fuchs testified that he had reviewed all of Kiesman's

medical records and found that as of December 31, 2009, she

could lift and carry up to ten pounds frequently and twenty

pounds occasionally.  He also found that Kiesman could sit,

stand, and walk for one hour at a time but could sit for a total

of six hours with the ability to change positions when

uncomfortable and could stand or walk for a total of three to

four hours during an eight-hour day.  Dr. Fuchs also found that

Kiesman was limited to occasionally doing postural activities

and overhead reaching.

    In weighing Dr. Fuchs's opinion, the ALJ explained that Dr.

Fuchs was serving as an impartial medical expert who was board

certified in orthopedic medicine.  The ALJ noted that Dr. Fuchs

considered medical evidence before and after Kiesman's last

insured date and found no additional functional limitations.

The ALJ also noted that Dr. Fuchs had explained that a finding

of "Waddel signs," as found by Dr. Knirk and discussed by Dr.

Jaffe, indicated that Kiesman's complaints of pain lacked

veracity.[2]  The ALJ gave Dr. Fuchs's opinion of Kiesman's

functional capacity great weight.

Kiesman contends that was error because Dr. Fuchs only

considered two of her twenty-nine medical records.  She further

contends that Dr. Fuchs's opinion was therefore based on an

incomplete record.  She cites medical records in 2006, right

after she injured her back, and in 2007 to show that she was

more impaired that Dr. Fuchs found.

Kiesman misunderstands Dr. Fuchs's testimony.  Dr. Fuchs

received and reviewed all of the medical evidence.  He testified

that he found two specific records, both records of treatment

after December 31, 2009, pertinent because those showed that

"aside from decreased back motion neurologically Ms. Kiesman is

generally intact."  Dr. Fuchs also testified that "there's no

evidence from my review of any significant limitations except

those perhaps of a postural nature; that is considering her age

she would have some limitations with kneeling, crouching,

---

[2] Kiesman faults the ALJ for noting the findings of Waddell
signs.  Contrary to Kiesman's theory, the ALJ did not rely on
findings of Waddell signs to conclude that Kiesman was not
credible or was not disabled.  See Ormon v. Astrue, 497 Fed.
Appx. 81, 86 (1st Cir. 2012); Ledoux v. Colvin, 2016 WL 3676193,
at *5 (D.N.H. July 6, 2016).  Instead, the ALJ noted that the
medical sources had commented on the findings of Waddell signs.

11

bending, et cetera, but other than that no significant
limitations."

Kiesman has not shown that the ALJ erred in giving Dr.
Fuchs's opinion great weight.


B.  Residual Functional Capacity Assessment

The ALJ found that Kiesman could perform light work with
additional limitations of being able to stand or walk for four
hours and sit for six hours but required the ability to change
positions as needed.  The ALJ also found that she could
occasionally do postural activities and could occasionally reach
overhead and do handling and fingering activities.  Kiesman
contends that the ALJ erred because the assessment is not
supported by substantial evidence, is not the same as the light
work definition in 20 C.F.R. § 404.1567(b), lacks a definition
of the sit or stand option, and did not account for Kiesman's
gastrointestinal disorder.  The Acting Commissioner argues that
the assessment was done properly.


1.  Substantial Evidence

Kiesman contends that the ALJ's residual functional
capacity assessment is wrong because of a typographical error in
using "sit" when the ALJ meant "six" and because the time

12

limitations for sitting, standing, and walking are cryptic or

ambiguous and not supported by substantial evidence.  Despite

Kiesman's interpretation and attempt to find confusion, the

ALJ's assessment is sufficiently supported by the opinions

provided by Dr. Fuchs and Dr. Jaffee.

Kiesman argues that the ALJ's finding that she could

"stand/walk for up to 4 hours each" means that she could stand

for four hours and then walk for four hours for a total of eight

hours in a work day.  That is not what the ALJ found.  Although

the ALJ's residual functional capacity assessment would have

been more clear if he had expressly said that Kiesman could

stand and or walk for a <u>total</u> of four hours, that is what he

intended.[3]

The ALJ relied on Dr. Fuchs's opinion that Kiesman could

"be ambulatory probably for at least three to four hours" in an

eight-hour work day.  The ALJ clarified with Dr. Fuchs that

"ambulatory" meant standing and walking combined.  Although

Kiesman interprets that opinion to limit her to three hours of

standing and walking, that is not what Dr. Fuchs found.  Dr.

---

[3] The ALJ's residual functional capacity assessment is
sloppy, unfortunately, with the typographical error of "sit"
instead of "six" and the imprecise wording of Kiesman's ability
to walk and stand.  Sloppiness, however, does not necessarily
require remand if the meaning is sufficiently clear, which it is
in this case.

Fuchs's opinion supports an ability to walk and stand for up to a total of four hours in an eight-hour work day.

The ALJ also relied on Dr. Jaffe's opinion that Kiesman could "[s]tand and/or walk (with normal breaks) for a total of – about 6 hours in an 8-hour day." Dr. Jaffee's opinion that Kiesman could stand and walk for a total of six hours provides support for an increased ability to stand and walk. The ALJ's finding of a more limited ability to stand and walk for a total of four hours is well within that limit.

Kiesman represents in her response to the Acting Commissioner's motion to affirm that the ALJ found that she was capable of walking for only two hours per day. Based on that representation, she argues that the ALJ's hypothetical to the vocational expert was wrong because it included an ability to stand and/or walk for up to four hours. As a result, she contends, the vocational expert's opinion does not provide substantial evidence to support the finding that she was not disabled.

Kiesman cites "Tr. 16" in support of her reference to the finding in the ALJ's decision. That document, however, is a prior decision, dated March 15, 2013, that is not at issue in this case. Kiesman, who is represented by counsel, did not identify the document as a prior decision, and does not explain

what relevance the finding in a prior decision has to the court's review of the current decision dated August 4, 2016. As such, the argument is meritless.

Kiesman also contends that the requirement that she be able to change positions as needed is ambiguous. She does not develop her theory of ambiguity and the limitation does not appear to be ambiguous on its face. See, e.g., Sprague v. Astrue, 2011 WL 1253894, at *4 (D. Me. Mar. 30, 2011). Kiesman has not shown that the ALJ erred in including a limitation that she must have the ability to change positions as needed.


2. Regulatory and DOT Definition

Kiesman contends that the ALJ's assessment is erroneous because it is more limited than the statutory definition of light work. Because of that discrepancy, Kiesman argues, the ALJ's assessment conflicts with the DOT definition of administrative clerk. She contends that the DOT provides the controlling definition, which shows that she could not do her former work as an administrative clerk.

Light work requires "a good deal of walking or standing" while sedentary work requires more sitting. § 404.1567(a) & (b). A claimant need not be able to perform a full range of light work as long as the assessment with limitations accurately

describe her functional capacity.  Couture v. Colvin, No. 14-CV-00069-JL, 2015 WL 3905273, at *4-5 (D.N.H. June 25, 2015).

Variations from the statutory definition in functional capacity can be considered and evaluated by the vocational expert.  Silva v. Berryhill, 263 F. Supp. 3d 342, 349-50 (D. Mass. 2017).

The ALJ included the limitation that Kiesman could stand and walk for only four hours in a work day to the vocational expert.  Even with that limitation, the vocational expert testified that Kiesman could return to her previous work as an administrative clerk.  The ALJ asked the vocational expert to notify him about any conflicts with the DOT, and the vocational expert found none.  Therefore, in this case, the ALJ properly relied on that opinion to find that Kiesman could do her previous work as an administrative clerk.  See, e.g., Lavoie v. Berryhill, 2018 WL 922140, at *8 (D.N.H. Feb. 16, 2018).

### 3.  Gastrointestinal Disorder

Kiesman asserts that the ALJ erred by failing to include limitations for her gastrointestinal disorder.  The ALJ found that there were medical records showing a history of gastrointestinal issues but with only limited symptoms before December of 2009.  The ALJ also noted that Kiesman testified that medication controlled her symptoms.  Based on that record,

the ALJ found that the gastrointestinal disorder was not severe and did not cause significant functional imitations. The ALJ did consider those issues, however, along with her other impairments.

Kiesman argues that the ALJ should have included limitations for her gastrointestinal disorder. She points to no medical evidence that the ALJ ignored or opinions that support any functional limitations for that condition. Therefore, she has not shown error.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 9) is denied. The Acting Commissioner's motion to affirm (document no. 14) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

April 17, 2018

cc: Karen B. Fitzmaurice, Esq.
    Penelope E. Gronbeck, Esq.
    Terry L. Ollila, Esq.